31919. WATKINS *v.* THE STATE.

878

DECIDED APRIL 24, 1948.

*George T. Manley, William F. Lozier,* for plaintiff in error.

*Paul Webb, Solicitor-General, William Hall, James W. Dorsey,* contra.

MacINTYRE, P. J. The defendant, Charlotte Watkins, was tried on an indictment for the murder of James William Booker by cutting, stabbing, and wounding him with a knife. The jury returned a verdict of voluntary manslaughter, and the defendant excepts, assigning error on the general grounds.

It appeared from the defendant's statement to the jury: That the deceased and the accused were what might be termed in common parlance "sweethearts"; that the deceased's conduct and treatment of the defendant had in the past been, and during the entire evening on which the present transaction took place was, somewhat rough; that the deceased had carried her around to several wine shops and finally bought and drank some beer, having had words with two other negro men from whom he borrowed money to buy the beer; and that, after she had reprimanded him for his conduct, he said: "You come on here. I am going to kill you now." And she further stated: "So we goes on—he pulls me on up there. As we get above this laundry right there next to this wine place he hauls off and slaps me. He knocks me down and knocks me on my side. I gets off of the ground and was crying. These detectives come along and at that time there was two or three people standing out in the street. They tells us to go on home, instead of them stopping and seeing what it was all about; and after he told us to go on home, they goes on down Forrest Avenue, and after they goes down Forrest, Booker thought they were gone and he pulled me up the street, and he said, 'I am going to kill you,' and he run his hand in his pocket. He turned my arm loose. He run his hand in his pocket, and he had it open, and next thing he come out with the knife. I knew he was going to cut me. I hit him on the arm and shoved him and he fell and dropped the knife

and I got it and stuck him. If I hadn't stuck him, I knew he was going to stick me, or either if I hadn't stuck him he would have cut me up so bad that I probably never would have been no more use for myself."

Police officer Acree testified in substance: that he and his fellow officer were attracted by a crowd of people on Forrest Avenue; that there were about eight or nine people in the crowd; that they saw the defendant and the deceased in this crowd; that they drove up to the crowd and ran them away; that they were making a loud noise; that the deceased and the defendant moved on up the street with the deceased on the outside; that they did not see any weapons in the deceased's hand or otherwise at the time; and that all this occurred about 9:30 or 9:40 at night. He further testified: "We started down the street, and I heard a noise back there, and we turned around in the middle of the block and went back to where this girl Charlotte and Booker was arguing, and about that time we turned around and headed to them, the boy fell and she was on top of him and I saw her pull a knife out. Before I saw that I heard loud talking. I did not see any physical fight before he fell. When I first saw them the boy had fell. His feet were on the sidewalk and his head was near the curb and she was on top of him. She was just kneeling over him, just laying down on top of him, and pulled the knife out of him when I saw them. I was about as far as I am from you when I saw that. Our headlights were on her and him, the headlights of our car. We had turned around and headed back to the curbing, and that throwed our lights on them. When I saw her kneeling there over him and pulling the knife out, Mr. Christian and I jumped out of the car. She jumped up and ran. Mr. Christian ran her for two hundred yards, I guess. She still had the knife in her hand. She threw it over in a field and we never did find the knife. I saw her throw the knife. We searched for the knife. We were never able to find it. We caught her and arrested her. I talked to her about this affair. As to whether she made any statements concerning this stabbing at all—she denied it, said she didn't do it, said she wasn't the one. She did not make any other explanation. That is all she would tell us, that she didn't do it."

"It is . . well settled that it is the prerogative of the jury to accept the defendant's statement as a whole, or to reject it as a whole, to believe it in part, or disbelieve it in part. In the exercise of this discretion they are *unlimited.*" (Italics ours.) *Jones* v. *State,* 71 *Ga. App.* 56, 57 (30 S. E. 284). See also, *Swain* v. *State,* 74 *Ga. App.* 391, 392 (39 S. E. 2d, 727). Therefore, the jury was authorized to find from the defendant's statement and from the evidence: that, a few moments before the fatal stabbing, the defendant had slapped and knocked down the accused, and a crowd had collected around them; that the police came up and required all of the crowd to move on; that the deceased and the defendant thereupon started up the street, but as soon as the deceased thought the police were out of sight, he told the defendant that he was going to kill her and drew an open knife out of his pocket; and that the defendant acquired the knife and stabbed the deceased. This was sufficient to authorize the jury to find that there was an assault by the deceased upon the defendant a few moments prior to the fatal stabbing, and that the interval between the assault or provocation given was not sufficient for the voice of reason and humanity to be heard. Code, § 26-1007. Or, under another phase of the defendant's statement and the evidence, the jury were authorized to find that there was an assault by the deceased upon the accused on the latter occasion when the killing actually occurred, which assault was not felonious. In either event, the jury were warranted in finding that the defendant stabbed the deceased without the actual or apparent necessity to do so to save her own life or to prevent the commission of a felony upon her, and in hot blood at a time when she had not had sufficient cooling time after an assault which did not amount to a felony. See *Goolsby* v. *State,* 147 *Ga.* 259 (1) (93 S. E. 407); *Smith* v. *State,* 147 *Ga.* 682 (95 S. E. 223); *Albert* v. *State,* 70 *Ga. App.* 39 (27 S. E. 2d, 249); *Jones* v. *State,* supra; *Swain* v. *State,* supra; *Henry* v. *State,* 76 *Ga. App.* 139 (45 S. E. 2d, 230).

It follows that the jury were warranted in finding against the defense of justifiable homicide and in returning a verdict of voluntary manslaughter.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*